139 N.J. Super. 389 (1976)
354 A.2d 328
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VINCENT BASKERVILLE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1975.
Decided January 28, 1976.
*390 Before Judges MATTHEWS, LORA and MORGAN.
Mr. Eric A. Summerville argued the cause for appellant.
Mr. Richard Mackay, Assistant Prosecutor, argued the cause for respondent (Mr. James T. O'Halloran, Hudson County Prosecutor, attorney).
PER CURIAM.
Defendant Baskerville and one Decker were indicted by a Hudson County grand jury for armed robbery. When the indictment was first listed for trial Decker moved for a severance on the ground that the results of a polygraph examination administered to Baskerville would be introduced into evidence. After ruling that the admissibility of polygraph results was not limited to impeachment purposes only, the trial judge granted the severance. Decker was thereafter acquitted.
In a stipulation dated October 17, 1973 Baskerville, with the advice of his lawyer, agreed to submit to a polygraph examination. The stipulation provided that the examination would be conducted by a qualified examiner to be designated by the State, and that the results of the testing, whether inculpatory or exculpatory, could be introduced as evidence by either party to the stipulation. If in the expert opinion of the designated examiner the results were inconclusive, such results would be inadmissible. Both the State and *391 defendant reserved the right to refuse to participate in any further testing, and both also reserved the right, at trial, to
* * * explore fully examiner's background in polygraph training and experience, as bearing on his qualifications as an expert, the equipment and procedures employed in pre-testing and testing Mr. Vincent Baskerville, as well as the nature of the questions asked.
The State designated Bruce C. Best as the examiner. After administering the test to defendant, Best was of the opinion that defendant was not giving truthful answers to pertinent questions concerning the robbery.
Prior to trial the State moved to exclude Michael McMahon, an expert witness retained by the defense, from testifying as to his analysis of the ploygraph test administered by Best, the results of which he found to be inconclusive. The trial judge ruled that the proposed testimony of defendant's expert witness as to his interpretation of the polygraph examination should be excluded except insofar "as it may go to the stipulated examiner's background in polygraph training and experience, his qualifications as an expert, the equipment and procedures employed in pretesting and testing Defendant and the nature of the questions asked." Defendant was granted leave to appeal from that order. We elected to consider the merits. R. 2:11-2. Briefs have been filed and we have heard the oral arguments of counsel.
The narrow issue before us on this appeal is one of first impression. We have not been cited to any case which deals with the precise question. The most pertinent decision is State v. McDavitt, 62 N.J. 36 (1972), which held that the results of a stipulated polygraph examination would be admissible into evidence where the stipulation is clear, unequivocal and complete, and where it is entered into with full knowledge on the part of defendant of his right of refusal. McDavitt held that it must also appear that the examiner is fully qualified and that the test is administered *392 in accord with established techniques. The court in McDavitt noted that there was no "serious challenge to the examiner's evaluation of defendant's physiological responses as indicating deception." 62 N.J. at 46.
Here, such a challenge is being made. Defendant wishes to introduce the testimony of his own expert rebutting the conclusions of Best, the stipulated examiner. Defendant contends that the October 17 stipulation is vague and ambiguous as to this particular point, and that such ambiguity should be resolved against the State, which drafted it.
Defendant points out that the stipulation makes no reference to what extrinsic evidence may be permitted to "explore fully" the examiner's background and training, etc., and that it does not expressly prohibit the defendant from rebutting the conclusions of the state-designated expert. Defendant also contends that his constitutional right to be heard and to present a defense would be violated by excluding his expert's testimony.
The State, on the other hand, argues that defendant agreed on Best as a polygraphist qualified to administer and evaluate the test, and that no such agreement was made with respect to defendant's expert. Moreover, the State asserts that "fairness" should estop defendant from repudiating the results of a test which he voluntarily took in seeking to exculpate himself, and that allowing a defendant to attempt to nullify the test results with his own expert would make submission to a polygraph examination a "self-serving" act, of possible benefit only to a defendant, who could shop around for favorable testimony.
While the defendant stipulated to Best as the polygraphist who would administer the test, he did not unequivocally bind himself to Best's evaluation of the results. Although such agreement might be implied, we find that it would be unfair to do so under circumstances where, as here, the stipulation as drawn by the State is ambiguous and the evaluation made is highly prejudicial. While we recognize the possibility that a *393 defendant could shop for favorable testimony, such testimony would constitute opinion evidence, subject to cross-examination by the State and ultimately reviewed by the jury as the sole arbiter of the weight and effect to be given it. State v. McDavitt, above, 62 N.J. at 47. We find it incongruous to permit extrinsic evidence to dispute the stipulated examiner's experience and methods, and at the same time to exclude evidence attacking the examiner's evaluation. This especially so in light of the policy supporting the general rule which excludes polygraph results because of their unreliability. We note, also, the provision in the stipulation excluding inconclusive results as somewhat supportive of our conclusion.
The State argues that the stipulation reserves defendant's right to cross-examine the State's expert. However, this reservation does not explicitly extend to the expert's evaluation, but only to his expertise and methods. If the State concedes that defendant may cross-examine as to the stipulated expert's evaluation, extrinsic evidence concerning this evaluation should not be excluded. It should be noted that defendant's expert did not administer an additional polygraph examination about which he proposes to testify. He has merely taken the same data from the stipulated test and apparently interpreted it differently.
Finally, we reject the State's argument that defendant has waived any constitutional right he may have had to produce independent testimony concerning the polygraph. There is insufficient evidence in the record to find the intentional relinquishment of a known right. As we have observed, the stipulation in this regard is ambiguous at best.
We conclude that defendant's expert should be permitted to testify as to his conclusions and evaluations of the polygraph data produced under the stipulation.
In a supplemental brief defendant contends that the admissibility of the results of the stipulated polygraph test should be limited to impeachment purposes only, and that accordingly they would be inadmissible if defendant does not *394 take the stand in his own behalf. The thrust of the argument is that the State may not attack a defendant's credibility where the defendant has not placed that credibility in issue by declining to testify. The State proposes to use the results of the polygraph test to corroborate the testimony of the victim of the armed robbery, whether defendant testifies or not. We conclude that the admissibility in direct evidence of the test results is justified by the fact that defendant stipulated that those results could be "used against" him "in a court of law." The stipulation is not limited to admissibility only for impeachment purposes. Defendant's argument, if accepted, could nullify the purpose of the stipulation by a refusal to testify. We do not read the stipulation to be terminable in that manner. The polygraph results are admissible notwithstanding defendant's refusal to testify. Cf. State v. McDavitt, 62 N.J. 36 (1972); State v. South, 136 N.J. Super. 402 (App. Div. 1975); State v. Valdez, 91 Ariz. 274, 371 P.2d 894 (Sup. Ct. 1962), and generally, Annotation, "Admissibility of lie detector test to be taken upon stipulation that the result will be admissible in court," 53 A.L.R.3d 1005 (1973).
The order of the Law Division insofar as it excludes and limits the admissibility of the testimony of defendant's expert is reversed, and in all other respects affirmed. The case is remanded for trial.